RENDERED: FEBRUARY 2, 2024; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2022-CA-0655-MR

WEST SIDE TRUCK PARTS, LLC,
AND NICK MCFADDEN                                        APPELLANTS


                    APPEAL FROM DAVIESS CIRCUIT COURT
v.                  HONORABLE LISA P. JONES, JUDGE
                    ACTION NO. 20-CI-00332


CHRISTOPHER DUNN AND
RED RYDER, LLC                                           APPELLEES


OPINION
AFFIRMING

** ** ** ** **

BEFORE: ACREE, KAREM, AND TAYLOR, JUDGES.

TAYLOR, JUDGE: West Side Truck Parts, LLC, and Nick McFadden bring this

appeal from a November 18, 2021, order of the Daviess Circuit Court granting

Christopher Dunn and Red Ryder, LLC's, motion for summary judgment and

denying West Side Truck Parts, LLC, and Nick McFadden's motion for summary

judgment and a May 26, 2022, order denying West Side Truck Parts, LLC, and

Nick McFadden's motion for reconsideration. We affirm.

On March 17, 2020, West Side Truck Parts, LLC, and Nick McFadden (collectively referred to as West Side) filed a Complaint in the Daviess Circuit Court against Christopher A. Dunn and Red Ryder, LLC (hereinafter referred to as Dunn). Therein, West Side claimed that it entered into a Real Estate Purchase Contract (Purchase Contract) with Dunn on July 22, 2016. Under the Purchase Contract, West Side alleged that Dunn agreed to sell real property located at 2029 Lancaster Avenue, 2026-2125 Lancaster Avenue, and 1300 Graves Street in Owensboro, Kentucky, to West Side for $400,000. According to West Side, Dunn refused to sell the subject real properties. The Complaint alleges:

12. From the date that the parties executed the contract that is in issue, and going forward, the Plaintiffs [West Side] made periodic payments to the Defendants [Red Ryder] to be credited toward the purchase price.

13. Pursuant to the agreement of the parties, the Plaintiffs were granted the right to possess and use the subject property from the date of the contract going forward.

. . . .

15. The Plaintiffs have fully complied with their obligations under the agreement(s) between the parties. In approximately February 2020, the Plaintiffs were advised by the Defendants, through the Defendants' counsel, that the Plaintiffs were being directed to surrender and vacate the property to the Defendants. The Defendants have informed the Plaintiffs that the Defendants do not intend to comply with their obligations under the contract between the parties.

-2-

16.    The Plaintiffs are ready, willing, and able to deliver to the Defendants the purchase price of $400,000.00 (Four Hundred Thousand Dollars) in payment for the subject real estate, pursuant to the agreement of the parties.

17.    The Plaintiffs are entitled to specific performance of the contract between the parties, including, but not limited to, the conveyance of good title to the subject real estate, together with all fixtures and equipment thereon, free and clear of any other interests or encumbrances, in exchange for the payment of the purchase price. Specifically, Paragraph #8 of the contract expressly states: "Either party has the right to demand specific performance should the other fail to perform any obligation."

18.    In addition, or in the alternative, the Plaintiffs state that the Defendants are in breach of the contract between the parties, and the Plaintiffs have, and will continue to sustain damages, compensatory and special, and the Plaintiffs are entitled to recover same from the Defendants.

19.    In addition, or in the alternative, the Plaintiffs state that the Defendants will be unjustly enriched by their conduct described above. In the alternative, the Plaintiffs are entitled to make a recovery under the doctrine of quantum meruit and/or unjust enrichment, all in an amount that exceeds the jurisdictional minimum of this Court.

Complaint at 2-3.

Dunn filed an Answer and Counterclaim. In the answer, Dunn generally denied the allegations in the Complaint. In the counterclaim, Dunn alleged that he leased real property located at 2029 Lancaster Avenue to West Side

-3-

and that West Side failed to make monthly rental payments in March 2020 and April 2020 as required under an October 1, 2015, Lease Agreement. As a result, Dunn claimed that West Side breached the Lease Agreement. Additionally, Dunn alleged that West Side executed a Promissory Note for the sum of $275,000 on September 1, 2015, that was delivered to Dunn as payee and holder of the Note.[1] Dunn claimed that West Side "breached the terms of said Promissory Note by their failure to pay any sum of money due[.]" Answer and Counterclaim at 3. Dunn also asserted that they owned certain items of personal property located on the leased premises and that West Side had sold said property. Dunn claimed that West Side had committed a conversion of personal property for which Dunn sought damages, attorney's fees, and costs.

On April 20, 2021, Dunn filed a Motion for Summary Judgment and attached the affidavit of Dunn in support thereof. In the motion, Dunn maintained that West Side breached the terms of the Lease Agreement. Pursuant to Dunn's affidavit, the last rental payment was received on February 1, 2020. As a result, Dunn asserted that West Side owed fourteen months' rent, for a total of $49,000. Dunn also contended that West Side had failed to pay property taxes as required under the Lease Agreement and owed a total of $9,129.67. As for the Promissory Note, Dunn relied upon his affidavit whereupon he swore that West Side had failed

---

[1] The Promissory Note was payable to Christopher A. Dunn only and not Red Ryder, LLC.

to make any payments, was in breach of the terms of the Promissory Note, and owed Dunn $275,000.[2] Dunn argued that the material facts were undisputed regarding their claims and they were entitled to summary judgment.

West Side responded and attached the affidavit of Douglas McFadden, a representative of West Side. Relying upon the affidavit of Douglas, West Side maintained that it had fully paid the Promissory Note of $275,000. West Side asserted that it made cash payments to Dunn totaling $275,000. According to Douglas's affidavit, Dunn requested to be paid in cash. West Side further maintained that it made $150,000 in cash payments to Dunn under the Purchase Contract and sought to purchase the real property for $400,000, the remaining balance owed. Thus, West Side maintained that genuine issues of material fact existed that precluded summary judgment on the Note indebtedness.

Thereafter, West Side filed a motion for partial summary judgment on the complaint. West Side cited to a February 3, 2020, letter from Dunn's attorney; therein, they assert it was "confirmed that the purchase price of the property in issue would be $400,000.00." Motion for Partial Summary Judgment at 1. West Side, thus, sought specific performance of the Purchase Contract and requested the

---

[2] The Promissory Note was executed by a representative of West Side Truck Parts, LLC, and Nick McFadden and Doug McFadden, individually, and was delivered to Christopher A. Dunn as payee on the Note. Douglas McFadden is not a party to the litigation nor subject to the judgment rendered on the Promissory Note for Dunn.

court to order Dunn to sell them the real property subject to the Purchase Contract for $400,000.

By order entered November 18, 2021, the circuit court granted Dunn's motion for summary judgment in part and denied West Side's motion for summary judgment. The circuit court noted that the existence of the Promissory Note was undisputed. Under its terms, the court pointed out that West Side agreed to pay Dunn the sum of $275,000. As a result, the circuit concluded that Dunn had demonstrated "a prima facie case that Plaintiffs [West Side] owe Defendants [Dunn] $275,000.00." November 18, 2021, Order at 12. However, the circuit court held that West Side failed to submit sufficient proof of payment of the Note indebtedness. As no genuine issue of material fact existed, the circuit court concluded that Dunn was entitled to summary judgment upon the claim that West Side owed $275,000 under the Promissory Note.[3]

The circuit court, likewise, determined that Dunn was entitled to summary judgment upon their claim of breach of the Lease Agreement. The circuit court recognized that it was undisputed that a Lease Agreement was executed by the parties, and under the Lease Agreement, West Side was required to pay monthly rental of $3,500 and taxes upon the leased property. The circuit court,

_____

[3] The circuit court granted judgment to the "Defendants" as concerns the Promissory Note claim as set out in the counterclaim. We have elected to treat this as a clerical error as clearly the only party named as the payee of the Note was Christopher A. Dunn, not Red Ryder, LLC.

-6-

upon review of the evidence produced by Dunn, concluded that West Side breached the terms of the Lease Agreement by not paying rent and taxes upon the real property. And, the circuit court held that West Side failed to introduce evidence that it did not breach the Lease Agreement. As no genuine issue of material fact existed, the circuit court concluded that Dunn was entitled to summary judgment as to breach of the Lease Agreement.

Additionally, the circuit court denied West Side's motion for partial summary judgment seeking specific performance to compel the sale of the property for $400,000. Relying on the October 1, 2015, Purchase Contract, the court noted that the sale price of the property was $550,000. The circuit court stated that West Side failed to offer proof that it had made cash payments totaling $150,000 to reduce the outstanding balance due under the Purchase Contract. Thus, the circuit court denied West Side's motion for partial summary judgment seeking specific performance of the Purchase Contract.

Subsequently, West Side filed a motion for reconsideration, and the circuit court denied same by order entered May 26, 2022. The court also included complete finality language per Kentucky Rules of Civil Procedure (CR) 54.02. This appeal follows.

On appeal, West Side contends that the circuit court erroneously rendered summary judgment for Dunn on the Note indebtedness. West Side argues

that genuine issues of material fact exist upon whether it paid Dunn $275,000 in cash that satisfied the indebtedness owed under the Promissory Note. West Side also argues that the circuit court erred in not granting it summary judgment to enforce the Purchase Contract. To support its arguments, West Side relies upon Douglas's affidavit. In the affidavit, West Side points out that Douglas stated that $275,000 in cash payments were made to Dunn in satisfaction of the Promissory Note. Additionally, West Side maintains that Douglas averred that West Side exercised its right to purchase the real property under the Purchase Contract in March 2020 and had paid $150,000 in cash to Dunn, thereby reducing the purchase price to $400,000. West Side maintains that Douglas's affidavit created genuine issues of material fact as concerns the Note indebtedness and thus, summary judgment for Dunn was improper. West Side also asserts that it was entitled to summary judgment to obtain specific performance of the Purchase Contract.

Summary judgment is proper where there exists no genuine issues of material fact and movant is entitled to judgment as a matter of law. *See Steelvest, Inc. v. Scansteel Service Center, Inc.*, 807 S.W.2d 476, 480 (Ky. 1991). All facts and inferences therefrom are to be viewed in a light most favorable to the nonmoving party. *Steelvest*, 807 S.W.2d at 480; CR 56.03. And, our review of summary judgment is *de novo*. *See Brown v. Griffin*, 505 S.W.3d 777, 781 (Ky. App. 2016).

-8-

To begin, we note that West Side does not challenge the validity of the Promissory Note or the underlying debt, but rather argues it has been paid in full. To support this argument, West Side produced the affidavit of Douglas McFadden. In the affidavit, Douglas stated that he was a representative of West Side and possessed a "working knowledge and understanding regarding the business of West Side . . . and . . . am knowledgeable with regard to its business records." Douglas McFadden's Affidavit at 1. Douglas then stated:

> 5. The promissory note that is referenced in the previously-referenced paragraph has been paid in full. Mr. Dunn always preferred – if not insisted – to be paid in cash. I am attaching to this Affidavit a series of text messages that confirm my payment to Mr. Dunn, and his receipt of these cash payments. The total cash payments made to him, as verified by these text messages, total $275,000.00. Screen shots of these text messages are attached as Exhibit 3.

However, a review of the text messages does not support Douglas's statement that $275,000 in cash was paid to Dunn on the Note debt. The text messages are ambiguous and self-serving at best. From the record below, it is impossible to discern the obligation that triggered the delivery of the Note to Dunn by West Side as makers, whether cash payments were actually made to Dunn to pay the Note indebtedness, including specific time, date, and location of payment, and whether those cash payments were actually received by Dunn as holder of the Note. More importantly, there are no written receipts from Dunn or any representative of Red

-9-

Ryder for cash payments on the Note indebtedness.  Likewise, there is no material evidence in the record below to substantiate that cash payments were actually made to Dunn for the debt.  The circuit court thoroughly reviewed the evidence, or lack thereof, and we find no error in the court's conclusions regarding the same.  Like the circuit court, we do not believe Douglas's affidavit is sufficient to establish a disputed material fact.  The record below simply fails to establish a genuine issue of material fact that would preclude entry of judgment for Dunn on the Note indebtedness.[4]

As concerns the Purchase Contract, West Side also relies on Douglas's affidavit in seeking an order of specific performance to compel Dunn to sell the property for $400,000.  Douglas simply states in his affidavit that "West Side had paid to Christopher Dunn, and Mr. Dunn had received, periodic payments that reduced the original contract price agreement from $550,000.00 to $400,000.00."  Douglas McFadden's Affidavit at 3.  To support this statement, Douglas then quotes from a February 3, 2020, letter from Dunn's attorney to West Side's attorney.  In the February 3, 2020, letter, Dunn offers to sell the real property for $400,000 if the parties enter into a contract to sell the real property at

---

[4] If this Court would accept West Side's argument to its illogical extreme, a summary judgment could never be granted in cases seeking enforcement of promissory notes, lease agreements, or contracts requiring periodic payments as a defaulting obligor could merely allege "he paid in cash" to preclude entry of summary judgment.  That is not the law in Kentucky.

such price "right now" and if West Side purchases the property by May 31, 2022. February 3, 2020, Letter at 1.  It is undisputed that West Side did not purchase the property within that time frame, and no written contract for the sale of the real property for $400,000 was produced by West Side.  Moreover, the February 3, 2020, letter does not support Douglas's statement that $150,000 in cash was paid to Dunn under the Purchase Contract.[5]

In the affidavit, Douglas also cites to a January 23, 2020, letter from West Side's counsel to Dunn's counsel.  Therein, it was stated:

> Since the inception of this Purchase Agreement, West Side has been making two monthly payments to Mr. Dunn, which consist of a $4,000.00 cash rental payment and a $4,000.00 principal payment to be applied towards the purchase of the subject properties.  While not stated in the enclosed Agreement, they agreed that these two payments would continue until the principal balance remaining on the purchase price was reduced to $400,000.00.  At that point, no additional principal payments would be required and only the one cash rental payment of $4,000.00 would continue.  Such payments have been made each consecutive month and West Side's cancelled checks reflect that sufficient payments have been made to reach the $400,000.00 principal amount remaining.

---

[5] For clarification, the Purchase Contract was the subject matter of the complaint whereupon West Side sought the remedy of specific performance.  The counterclaim sought primarily to enforce the Promissory Note and Lease Agreement between the parties, not the Purchase Contract.

It must be emphasized that West Side failed to produce any cancelled checks demonstrating $150,000 in payments were made to Dunn by check to satisfy the Purchase Contract. The circuit court also concluded that any evidence of cash payments was not sufficient, to which we agree.

Based on our review, it is undisputed from the record below that the Purchase Contract clearly states that the purchase price for the property was $550,000. And, as previously stated in this Opinion, West Side failed to present sufficient evidence to document the alleged $150,000 in cash payments to Dunn. Accordingly, there being genuine issues of material fact regarding the purported payment of $150,000 to Dunn, and thus a dispute over the purchase price between the parties, we are of the opinion that the circuit court properly denied West Side's motion for partial summary judgment seeking specific performance of the Purchase Contract to compel the sale of the property.[6]

Finally, we note that West Side raises no issue nor presents any arguments on appeal regarding the Lease Agreement or the circuit court's judgment for back rent and taxes in favor of Dunn and Red Ryder. Accordingly, summary judgment on those issues is affirmed.

---

[6] This Opinion does not reach the merits of the validity or enforceability of the Purchase Contract between the parties including the purchase price for the property.

For the foregoing reasons, the orders of the Daviess Circuit Court

entered November 18, 2021, and May 26, 2022, are affirmed in their entirety.

ALL CONCUR.

BRIEFS FOR APPELLANTS:

Matthew J. Baker
Bowling Green, Kentucky

BRIEF FOR APPELLEES:

Matthew C. Tierney
Owensboro, Kentucky